## UNITED STATES v. CORSO.

## SAME v. DINARO.

## SAME v. MALONE.

### Nos. 6703–6705.

Circuit Court of Appeals, Seventh Circuit.
Dec. 17, 1938.

George W. Sprenger, of Peoria, Ill., for appellants.

Howard L. Doyle, U. S. Atty., of Decatur, Ill., and George R. Kennedy, Asst. U. S. Atty., of Alton, Ill., for the United States.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

In this case the appellants Joseph Corso, Ernest Dinaro and Charles Malone, together with the other defendants William J. Wrigney, Stanchil E. Hardy and Robert Clark were charged by Grand Jury indictment in four counts. The first three counts charged the defendants with possessing, with intent to pass and utter, counterfeit ten dollar silver certificates of the United States government (a violation of Title 18, Sec. 265 of the United States Code, 18 U.S. C.A. § 265); the fourth count charged the

defendants with a conspiracy to possess, pass and utter the counterfeit money (a violation of Title 18, Sec. 88 of the United States Code, 18 U.S.C.A. § 88). Clark and Hardy pleaded guilty, and the other defendants waived the jury. The court, after hearing the evidence, found Wrigney not guilty and adjudged the appellants guilty as charged. From their respective judgments the appellants present this appeal.

In substance, the government's witnesses testified as follows. The appellants and the defendants Clark and Hardy, all residents of Illinois, had become acquainted with each other through their common interest in bootlegging activities. Dinaro managed a Springfield night club which was owned by Malone, his brother-in-law. Hardy was a tavern keeper and operator of electric coin victrolas in Peoria. Clark, now in the trucking business, had always been interested in illegal alcohol traffic. Corso, who had engaged in bootlegging conduct, now was out of work at LaSalle. In October of 1937, two counterfeit ten dollar bills appeared in some way in Dinaro's and Malone's night club, which they used to pay off two creditors of the night club. Early in 1938, Dinaro suggested to Clark that they might obtain counterfeit money from a third party who turned out to be Corso. A little later Hardy expressed to Clark his desire to obtain some counterfeit money. In April of 1938, Dinaro, Malone and Clark motored to LaSalle where Clark met Corso, who was Dinaro's friend. Corso, who was in possession of the counterfeit money, handed over to Dinaro the counterfeit bills. In turn Dinaro gave thirty-nine of them to Clark, with instructions to pass nineteen of them for Corso. Clark sold twenty of them to Hardy, who hid these in one of his coin victrolas, where they were found later by the government agents. Then Hardy and Clark passed about eight of the nineteen bills in Bloomington taverns in payment for drinks.

In substance, the witnesses for the defense, namely, the appellants and the defendant Hardy, testified that all the meetings and conversations held by the defendants (except the defendant Wrigney) were for one purpose only, that is, for the participation by them in bootlegging activities as distinguished from counterfeiting activities.

It should be stated here that in main the government's evidence was based on accomplice Clark's testimony. In effect, the witnesses for the defense testified that Clark's testimony was perjured. It is true, however, that Clark's testimony is convincing and corroborated in many particulars by other witnesses. Thus, the appellants themselves practically admit all of the meetings and conversations described by him, disagreeing with him only as to the purpose of these occasions. In addition, the government agents and the city police officers testify as to their observation of many of these meetings, while the Bloomington tavern keepers render testimony that Clark and Hardy passed about eight of the counterfeit bills. Moreover, Hardy is caught in possession of the twenty counterfeit bills, which Clark had sold, and which are proven to have been printed from the same plate as the two counterfeit bills passed in October of 1937 by Dinaro and Malone.

The assignment of errors contains nine parts, many of which are general in nature. The principal assignment of error and the one most strongly relied upon by the appellants is that there is an insufficiency of competent evidence to establish guilt beyond a reasonable doubt. As to this, we believe that the appellants overlook the distinction between credibility and competency of testimony. Although an accomplice's testimony may be attacked before the jury (or, as here, before the trial court sitting without a jury) as unworthy of belief, yet it is competent evidence and may, standing alone, support a conviction. In this case, the appellants' innocence can only be upon the theory that Clark's story is false. Clark's story alone, if believed, is sufficient upon which to rest conviction. At the most, appellants' testimony makes for conflicting evidence, which presents a question of weighing the evidence. To weigh the evidence is not within the power of this court.

We believe that one other assignment of error challenges our serious consideration. The trial court permitted one Schaetzel, government agent, to testify as to his conversation with Clark. This conversation was in the nature of a confession by Clark, who in effect placed himself in the custody of the government and thereby terminated the conspiracy. Since Clark is a defendant who is not on trial (having pleaded guilty), we believe that the trial court was in error in admitting this conversation—an admission of a co-conspirator after the conspiracy had terminated—

as an exception to the hearsay rule. We also believe, however, that this was not a reversible error. At most this evidence was merely a repetition of Clark's direct testimony. Appellants were not prejudiced because, at the motion of the government, this hearsay evidence was stricken by the court sitting without a jury.

Therefore, since a thorough search of the record reveals no reversible errors of law and discloses substantial evidence to support conviction, the judgments are affirmed.