STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. NICHOLAS STEFANELLI, SAMUEL CORSARO AND ROBERT BISACCIA, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued January 11, 1977—Decided March 28, 1977.

Before Judges MATTHEWS, SEIDMAN and HORN.

*Mr. Thomas Ford,* designated counsel, argued the cause for appellants Stefanelli and Corsaro (*Mr. Stanley C. Van Ness,* Public Defender, attorney) ; *Mr. Thomas Ford,* retained counsel, argued the cause for appellant Bisaccia .(*Mr. Frank H. Reimers,* of counsel and on the brief for all appellants).

*Mr. Marc J. Friedman,* Assistant Prosecutor, argued the cause for respondent (*Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney).

PER CURIAM. Defendants were each found guilty after a 2½-week jury trial of three counts of an Essex County Indictment which charged them each with conspiracy to break and enter and conspiracy to commit larceny (*N. J. S. A.* 2A:98–1) ; entering with intent to steal (*N. J. S. A.* 2A:94–1), and larceny of goods the value of which exceeded $500 (*N. J. S. A.* 2A:119–2). The trial judge sentenced Bisaccia to an aggregate five to seven years, and Corsaro and Stefanelli to an aggregate seven to nine years on the three charges.

Defendants have filed an elaborate brief on appeal, raising numerous arguments for reversal which we treat seriatim.

A brief statement of the facts is necessary for an understanding of the various arguments raised by defendants on this appeal.

The evidence adduced by the State established that one Cicala, as the result of knowledge obtained by him, informed one Festa that a house in North Newark owned by the Brunos would probably be a good place to burglarize because of the probable existence of items of wealth therein. Cicala stated that he knew Festa to be a professional burglar, and it was his hope that if Festa was successful in burglarizing the Bruno home, he would receive a cut in any proceeds. About two weeks after speaking to Festa, Cicala was informed by Festa that the job could not be successful because of the existence of a burglar alarm in the house. That was the end of Cicala's activities with respect to any burglary, and he never received any proceeds of the burglary that ultimately ensued.

Festa testified as to his conversation with Cicala and corroborated the fact that Cicala had nothing further to do with the conspiracy or entry once he had informed him of the existence of the burglar alarm. However, Festa, after checking the house, contacted Stefanelli and one Sperduto about the Bruno house. Subsequently, the State contends, Corsaro, Bisaccia, Sperduto and Stefanelli, bypassed the burglar alarm and entered the Bruno home and stole various items, the value of which exceeded $500. It was through the cooperation of Festa with the State that the three defendants and Sperduto were apprehended. As indicated, Festa testified at trial and was, for all intents and purposes, the State's "star" witness.

I

*The Admission of the Testimony of Cicala with Respect to the Conspiracy*

Defendants first contend that the trial judge improperly permitted the testimony of Cicala to be admitted against them. The trial judge relied on *Evid. R.* 63(9), which permits a statement to be admitted against a party if that statement was made while the party and the declarant were par-

ticipating in a plan to commit a crime and the statement was made in furtherance of that plan. The State denies that it used this rule as the basis for admission. Rather, it contends that the testimony of Cicala was admissible because he was a coconspirator. We have some doubt as to both the relevancy and the competency of the testimony of Cicala considering the proofs of the State as adduced.

Cicala's conversation with Festa with respect to the Bruno house and its contents took place during June 1971. The conversation between Festa and him with respect to the burglar alarm took place not more than two weeks thereafter. It is undisputed that there were no conversations between Cicala and Festa, or Cicala and any of the defendants between June 1971 and August 1972. The indictment under which these defendants were charged alleged that a conspiracy existed among the parties "between on or about the 15th day of *July 1972* and on or about the 1st day of September 1972." Although the indictment was later amended to have a commencement date of the conspiracy in June 1971 (an amendment about which we have grave doubt) the proofs adduced by the State do not tie Cicala to the three defendants in any way. For this reason and without deciding the issue presented to us, we observe that the use of Cicala's testimony was probably an example of prosecutorial "overkill" and is harmless error.

## II

*The Admission of Assistant Prosecutor Falcone, Detective Donahue and F. B. I. Agent Wilson regarding other crimes of Festa.*

As indicated, Festa became the principal witness for the State. Festa had a long career of criminal activity both in this State and in Pennsylvania. He was also involved with the federal authorities. Under an arrangement made with the federal authorities and the Essex County Prosecutor's office, Festa was to cooperate in solving numerous crimes,

in return for which he was to receive lenient treatment with respect to sentencing. In addition, the New Jersey authorities were to appear in Pennsylvania and inform the sentencing court there of Festa's cooperation with authorities here in New Jersey. Anticipating an attack on Festa's credibility on cross-examination, the State produced the assistant prosecutor, a detective and an F. B. I. agent to describe the extent of Festa's cooperation with authorities and the promises that were made to him for such cooperation.

■ Defendant's first argument, that it was improper for the State to introduce evidence of Festa's criminal activity on direct examination is without merit. We do not read *R.* 20 as inhibiting such a procedure. Nor do we find any limitation in this respect in the provisions of *N. J. S. A.* 2A:81–12. Moreover, we do not regard the testimony of the three witnesses mentioned as an attempt to neutralize the testimony of any witness, or as being supportive of Festa's credibility. It was obviously nothing more than an attempt on the part of the prosecution to establish that an agreement existed between the prosecutor's office and Festa whereby Festa would benefit if he told the truth and provided the prosecutor with information that would implicate others.

■ Defendants' second argument, that this testimony went to the reliability of Festa's testimony, is also without merit. It was the cross-examination of the three witnesses mentioned in which defense counsel, over the objection of the prosecutor indeed, elicited from the witnesses that they believed the testimony that Festa had given. Any error, if it existed, was induced by defense counsel's cross-examination and not by the State.

### III

### *The Admission into Evidence of Cicala's Guilty Plea to the Conspiracy Indictment*

Prior to trial, Cicala pleaded guilty to conspiracy to break and enter the home of Bruno; however, he refused to plead

guilty to the indictment in which he was charged because the conspiracy alleged therein extended between the 15th day of July 1972 to the 1st day of September 1972. The trial judge agreed with Cicala and refused to let him plead to that indictment as it stood because of the time discrepancy. As a result, the date of the indictment was amended by the trial judge at the request of the prosecutor so that the conspiracy was alleged to have begun in June 1971. Cicala pleaded guilty to the first count of the indictment as amended. In response to the plea bargain, the second two counts with respect to Cicala were dismissed. When Cicala took the stand, the trial judge permitted him to testify that he had entered a guilty plea to the charge of conspiracy. Defense counsel objected to this testimony on the ground that Cicala had not entered a guilty plea to the first count of the unamended indictment which charged his defendants with conspiracy. The trial judge overruled the objection because he had amended the indictment.

. The State argues that permitting Cicala to testify that he had entered a guilty plea to the conspiracy charge was for the purpose of affecting the credibility of the witness by showing his interest in the result of the case; and regardless of the admissibility of the actual guilty plea, this evidence was of little impact in light of the detailed testimony of the witness with regard to his participation in the crime. We believe this argument simply begs the issue.

The prosecutor's argument is negated by the words of the assistant prosecutor in referring to Cicala's plea during the summation:

* * * [A] young man named Joseph Cicala pleaded guilty to conspiring to break, enter and commit larceny inside the Bruno home. They [the defendants] said it never happened, you see. Mr. Cicala pleaded guilty to something that didn't happen.

Ladies and gentlemen, isn't your intelligence being insulted by an argument like that? I mean, aren't these defendants talking down to you as if you were a bunch of five year old children?

Defense counsel objected to these remarks; however, his objection was predicated upon the fact that Cicala had not entered a guilty plea to the original indictment but the amended indictment.

It is fairly apparent that the testimony of Cicala with respect to the guilty plea was used for the purpose of impressing the jurors of the existence of the conspiracy. After all, an individual would not plead guilty to a conspiracy that did not exist. We believe even the inference to be drawn from this testimony created prejudice which had to affect the outcome of the trial. In addition, no limiting instruction was given by the trial judge so that the jurors were permitted to use Cicala's testimony as they pleased.

The prejudicial error inherent in the admission of such testimony was referred to in *United States v. Toner*, 173 F. 2d 140 (3 Cir. 1949):

> From the common sense point of view a plea of guilty by an alleged fellow conspirator is highly relevant upon the question of the guilt of another alleged conspirator. If A's admission that he conspired with B is believed, it is pretty hard to avoid the conclusion that B must have conspired with A. This is one of the cases, therefore, where evidence logically probative is to be excluded because of some countervailing policy. There are many such instances in the law. See 4 *Wigmore, Evidence* § 1171 *et seq.* (3d Ed. 1940).
>
> The foundation of the countervailing policy is the right of every defendant to stand or fall with the proof of the charge made against him, not against somebody else. Acquittal of an alleged fellow conspirator is not evidence for a man being tried for conspiracy. So, likewise, conviction of an alleged fellow conspirator after a trial is not admissible as against one now being charged. The defendant had a right to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else. We think that the charge given upon this point was contrary to that rule and inadvertently, of course, deprived the defendant of a very substantial protection to which he was entitled. [at 142; footnotes omitted]

In addition, we note Cicala's guilty plea was made to an amended indictment which extended the period of the alleged conspiracy. The grand jurors who considered the evidence and

ultimately handed up the indictment charging these three defendants ostensibly did not consider any evidence with respect to proceedings before July 1972. The amendment here was made merely to accommodate Cicala. Defendants were not charged by the grand jurors with having conspired prior to the 1972 date.

## IV

### Miscellaneous Arguments for Reversal

We are satisfied from our review of the record that the arguments of defendants raised with respect to (a) the testimony of the assistant prosecutor regarding the sentence to be received by Festa in Pennsylvania and the prosecutor's reference to it in summation; (b) the prosecutor's comment that the testimony of F. B. I. Agent Wilson should be believed because of his official position; (c) the testimony with respect to the alleged telephone conversation between Festa's daughter and one of the codefendants; (d) the variance between the amended and unamended indictments and the proof adduced at trial; (e) the alleged testimony of the assistant prosecutor that Festa was in protective custody, and (f) that there was cumulative error in all the foregoing requiring reversal, to be without merit.

Because of the error found under Point III, above, relating to the testimony of Cicala with respect to his guilty plea to the conspiracy charge, we find defendants to have been prejudiced to the extent that they were denied a fair trial. Accordingly, the convictions are reversed and the cause remanded to the Essex County Court for a new trial.