STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
NICHOLAS STEFANELLI, SAMUEL CORSARO, AND
ROBERT BISACCIA, DEFENDANTS-RESPONDENTS.

Argued April 25, 1978—Decided January 10, 1979.

420

*Mr. Marc J. Friedman,* Deputy Attorney General, argued the cause for appellant (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney; *Mr. Donald S. Coburn,* Essex County Prosecutor, of counsel).

*Mr. Thomas P. Ford, Jr.* argued the cause for respondents (*Mr. Stanley C. Van Ness,* Public Defender, attorney for

respondents Stefanelli and Corsaro; *Mr. Thomas P. Ford, Jr.,* attorney for respondent Bisaccia).

The opinion of the court was delivered by

HANDLER, J. Defendants Nicholas Stefanelli, Gerald Sperduto, Robert Bisaccia, Joseph Cicala, Nelson Tosi, Sam Corsaro and John Quartuccio were indicted and charged with conspiracy to break and enter and to commit larcency (*N. J. S. A.* 2A:98–1) as well as the substantive offenses of entering with intent to steal (*N. J. S. A.* 2A:94–1) and larceny of goods valued over $500 (*N. J. S. A.* 2A:119–2). There followed an extended trial on these charges. The cases against defendants Cicala, Tosi and Quartuccio were disposed of prior to the completion of the trial. The remaining defendants were eventually convicted by the jury and later sentenced. Appeals were taken by Bisaccia, Corsaro and Stefanelli. The Appellate Division, in a reported *per curiam* opinion, reversed these convictions and remanded the matter for a new trial. *State v. Stefanelli,* 153 *N. J. Super.* 452 (App. Div. 1977). This Court granted certification limited to the "issue of the use of the testimony of Cicala as to his plea of guilty and the prosecutor's comments thereon." 75 *N. J.* 4 (1977).

I

The indictment charged in three counts that between July 15, 1972 and September 1, 1972, defendants conspired with Gerald Festa, an unindicted co-conspirator, to break and enter the home of Dominick Bruno to steal money, goods and chattels and that on August 27, 1972, defendants actually broke into Bruno's home and stole money and jewelry valued in excess of $500. The indictment recited four overt acts committed in furtherance of the conspiracy. Of special importance here is the first overt act relating to defendant Joseph Cicala. This act, according to the indictment, consisted of a conversation between Cicala and Festa during which Cicala informed Festa that money and jewelry were

contained in the Bruno home and the home was frequently unoccupied on weekends. The indictment did not specify the date of this conversation and did not in any other way refer to Cicala.

On the day of trial, Cicala appeared before the trial judge and pled guilty to the conspiracy charge pursuant to a plea bargain. In exchange for the guilty plea the State agreed to recommend that the remaining counts of the indictment be dismissed and that Cicala receive "consideration" at the time of sentencing for his "cooperation" with the State. Cicala admitted that he conspired with Festa for the purposes of breaking and entering the Bruno home with intent to steal as set forth in the conspiracy charge and the first overt act; he denied any further involvement with Festa or any of the other defendants. He stated, however, that his conversations with Festa occurred in June 1971, not in 1972 as charged in the indictment. The trial judge, with the acquiescence of Cicala's attorney, stated that he was amending the conspiracy count of the indictment to reflect the conspiracy starting in June 1971. He then accepted Cicala's plea of guilty. No formal amendment order, however, was entered nor was any written notation made upon the official indictment to reflect the amendment authorized by the court. It appears that the other defendants and their attorneys were present in court during these proceedings.

The jury trial then commenced. Cicala was called as a State's witness. He revealed that he was employed as a hairdresser at an establishment within walking distance of the Bruno home and he had observed that one of his customers, Mrs. Dominick Bruno, invariably wore expensive jewelry. He also testified that he was aware that substantial amounts of cash were kept at the Bruno house and that the Brunos were in the habit of vacationing at the Jersey shore. Cicala knew that Festa was a burglar. He stated that he spoke to Festa and suggested that "it might be a good idea to rob the [Bruno] house", and that in the

past he had given such information or "scores" to Festa; Cicala hoped to receive a "cut" or a share of the proceeds of any burglary of the Bruno home. That evening, acting upon his conversation with Cicala, Festa visited the Bruno home to "case the joint" with Quartuccio, an expert in burglar alarms, who found a relatively sophisticated alarm system and told Festa to forget about any break-in of the Bruno home. Festa, in turn, told this to Cicala. Cicala had no further direct or active involvement in the criminal enterprise after this point.

In July, approximately one month after these events (but, in the year 1972, according to Festa's testimony), Stefanelli and Sperduto were approached by Festa as to the feasibility of breaking into the Bruno home. Apparently relying upon Cicala's information, Festa told them of the location of the cash and jewelry in the Bruno home as well as the fact that the home was frequently vacant on weekends. Festa then inspected the Bruno home with Stefanelli who indicated that the burglar alarm posed no problem since Tosi, his brother-in-law, could "jump it". About two weeks later, in late July or early August, according to Festa, Corsaro, Bisaccia and Sperduto visited Festa and made additional inquiries concerning the feasibility of a break-in of the Bruno home.

On August 20, 1972, Dominick Bruno and his family went to San Francisco for a two-week vacation. At 8:30 A.M. on August 27, 1972, the home was discovered to have been ransacked; the police were notified and arrived at the scene. Although there was no evidence of a forced entry, a knife was stuck in the wall holding up the wiring to the burglar alarm, presumably short-circuiting or "jumping" the wires and deactivating the alarm system enabling the perpetrators to enter the house. Dominick Bruno was contacted by phone that evening and apprised of the incident; he arrived the next day and inspected his home to determine what, if any, items were missing. He claimed a variety of his home furnishings as well as numerous recently acquired goods had been stolen, and subsequently filed an insurance claim of

$14,543.90 for stolen and damaged property. Ultimately he collected only $6,800.

The only testimony which directly linked defendants with the actual break-in of the Bruno home came from Festa, the State's principal witness. In addition to his testimony of his own initial conversations with Cicala and his following discussions with the various defendants and exploratory visits to the Bruno home, Festa stated that he did not learn of the actual break-in until approximately one week after its occurrence. He had received a telephone call from Stefanelli who, without mentioning the break-in, requested that Festa meet with him. Moments before Festa was about to leave his home to meet with Stefanelli, however, he was visited by a detective of the Bandit Squad of the Newark Police Department. When questioned by the detective, Festa denied any participation in the break-in and he was told that the thieves "got a couple of good pieces of jewelry but missed the money." Festa then met Stefanelli, in the presence of Bisaccia and Sperduto, and it was admitted to Festa that they had committed the crime or, in their argot, the Bruno "score". They menioned that Tosi had disconnected the burglar alarm enabling them to enter the Bruno home, and once inside the house they searched unsuccessfully for cash and jewelry, generally tearing the house apart in the process, and they had telephoned Festa from the Bruno home but did not reach him.

The genesis of the issue on this appeal occurred during Cicala's testimony when he related the circumstances surrounding his guilty plea. Cicala, it is to be recalled, had given a detailed account of his early though limited involvement in the conspiracy. After Cicala had so testified, the prosecutor asked him whether he had been arrested in this matter. Defense counsel objected on general grounds, but the court overruled the objection and the witness answered in the affirmative. At this point the prosecutor began to inquire into Cicala's cooperation with the Essex County

Prosecutor's Office when defense counsel interrupted the questioning, and the following colloquy ensued:

Defense counsel: Is the purpose of the Prosecutor's question to bolster the credibility of his witness? I believe he has testified as to what he knows regarding this particular incident. He has testified as to what is relevant as far as this case is concerned.

Now, what the Prosecutor is attempting to do I think is bolster the credibility of his witness by the form of questions as to what might have happened subsequent to this event as to conversations he might have had.

Quite obviously, after whatever relationship he had with this particular incident terminated by his giving any statement to them —

Prosecutor: Not at all, your Honor, the purpose of these questions is to advise the jury and the Court —

Court: I am going to allow the question without hearing your purpose.

Cicala then stated that "recommendations would be made to the sentencing judge as to my cooperation in this case." He further testified that he had previously pled guilty to the first count of the indictment. Defense counsel thereupon objected to this testimony but solely on the ground that Cicala had pleaded guilty to the indictment as amended and not the original indictment. This objection was also overruled by the court for the reason that he had "amended the indictment".

Cicala's testimony concerning his guilty plea was subsequently commented upon by the prosecutor during summation. The prosecutor, in an apparent attempt to refute the innuendo of defense counsel that the crime was engineered by Bruno in order to defraud his insurance company, stated:

Bruno burglarized his own home, it never happened, and yet a young man named Joseph Cicala pleaded guilty to conspiring to break, enter and commit larceny inside the Bruno home. [Defendants] said it never happened, you see. *Mr. Cicala pleaded guilty to something that didn't happen. Ladies and gentlemen, isn't your intelligence being insulted by an argument like this?* I mean, aren't these de-

fendants talking down to you as if you were a bunch of five year old children?

(Emphasis added).

Defense counsel objected to these comments, but was over-ruled by the court. Defense counsel argued vigorously, out of the presence of the jury, that the court had disallowed any comment to the jury on the disposition of the charges against Tosi (that being a directed judgment of acquittal) and that by permitting the prosecutor now to imply that "because Cicala pleaded guilty * * * this crime occurred and these defendants are guilty" was patently unfair. The court overruled defense counsel's objection and no cautionary instruction was given the jury. In the charge to the jury, the court, without referring specifically to Cicala's testimony concerning his guilty plea, merely stated in general terms that evidence of the convictions of Festa and Cicala had been introduced for the purpose of affecting their credibility. (Festa had numerous prior convictions as well as pending charges against him; Cicala had also testified to a federal conviction in addition to his guilty plea to the conspiracy under the indictment being tried.) The case was submitted to the jury which returned guilty verdicts against defendants on all counts.

## II

Defendants contended before the Appellate Division that Cicala's factual testimony concerning his actual involvement in the conspiracy had been improperly admitted. The court observed that since Cicala's two conversations with Festa occurred during June 1971 and there were no conversations between Cicala and Festa nor any of the defendants thereafter, "the proofs adduced by the State [did] not tie Cicala to the three defendants in any way", 153 *N. J. Super.* at 456, and thus any error in the admission of this testimony was harmless. The court also expressed "grave doubt" as to the amendment of the indictment, which moved the com-

mencement of the conspiracy back to June 1971 from July 15, 1972 as originally charged. *Id.* The Appellate Division, however, did not actually rule upon either of these contentions.

There should be dispelled at the outset any outstanding doubt as to whether Cicala's testimony of his actual participation in a criminal conspiracy with Festa to burglarize the Bruno home was relevant to the issue of the guilt of the other indicted defendants. The testimony of Cicala, as well as Festa, disclosed that Cicala conceived the criminal scheme to burglarize the Bruno home; his conversations with Festa evidenced an unlawful agreement to accomplish this. It was obviously their understanding that Festa, a professional burglar, would attempt to follow up on this lead and, if he were successful, Cicala would share in the fruits of the burglary.

This testimony spelled out a criminal conspiracy, the essence of which is the unlawful agreement. It is not essential that the conspiracy be successful or that the agreement be fully or substantially carried out; if there be an agreement to accomplish a criminal end, it is sufficient that some step, no matter how small or innocuous, be taken to further the conspiracy. See *State v. Carbone,* 10 *N. J.* 329, 336–338 (1952) ; also *State v. Dennis,* 43 *N. J.* 418, 423–424 (1964) ; *State v. Lennon,* 3 *N. J.* 337, 341–342 (1949). The relevance of this evidence to the issue of the guilt of the other indicted defendants is patent. These defendants, according to the testimony, joined the conspiratorial plan which had been conceived by Cicala and launched by Festa. The ignorance of defendants as to how the conspiracy was hatched and of Cicala's initiating role or expectations in no way alters their own criminal responsibility. *State v. Carbone, supra; State v. Graziani,* 60 *N. J. Super.* 1, 18 (App. Div. 1959), aff'd o.b. 31 *N. J.* 538, *cert.* den. 363 *U. S.* 830, 80 *S. Ct.* 1601, 4 *L. Ed.* 2d 1524 (1960). Nor does the fact that Cicala had no personal knowledge of the outcome of his plan or of the identities of the persons who later executed

the plot lessen defendants' actual part in the burglary scheme. *Cf. U. S. v. Cohen,* 197 *F.* 2d 26, 29 (3 Cir. 1952).

With respect to the concern of the Appellate Division over the change of dates in the indictment to accommodate the receipt of Cicala's guilty plea, the indictment was clearly amendable to show the earlier date. Our rules permit amendments "to correct * * * the description of the offense intended to be charged" so long as this does not result in charging a "different offense" and "the defendant will not be prejudiced thereby in his defense on the merits." *R.* 3:7–4. The change of date to accord with Cicala's version of the time did not result in the presentation of a "different offense." Where, as here, time is not crucial either to the defense to or prosecution of a charged offense, an amendment changing or correcting a date is not objectionable. *State v. Witte,* 13 *N. J.* 598, 604–607 (1953); *State v. Kuske,* 109 *N. J. Super.* 575, 583–586 (App. Div. 1970); compare *State v. Sing Lee,* 94 *N. J. L.* 266 (E. & A. 1920) and *State v. Faulks,* 97 *N. J. L.* 408 (Sup. Ct. 1922). Generally, "time is not of the essence of the offense of conspiracy", *State v. Unsworth,* 85 *N. J. L.* 237, 241 (E. & A. 1913), and it was not so in this case. Moreover, defendants were neither prejudiced by nor unprepared for any variance between dates. See *State v. Holder,* 137 *N. J. Super.* 300, 305 (App. Div. 1975). They were present in court when Cicala entered his guilty plea and could anticipate completely his later testimony at trial to the same effect. Furthermore, they did not seek any clarification of the judge's amendment of the indictment nor did they request a postponement of trial as a condition to the amendment, *R.* 3:7–4, and in fact, defense counsel fully exploited the asserted disparity between the dates on Cicala's cross-examination.

In short, the Appellate Division expressed needless misgivings as to the relevance of Cicala's testimony concerning his actual participation in the conspiracy, as well as to the actual or assumed amendment of the indictment to charge the conspiracy as having begun in June 1971. The testi-

mony was clearly material to the issue of the guilt of defendants and it did not, either in terms of its general relevance or in relation to the conspiracy charge of the indictment, catch defendants by surprise or prejudice them in their defense.

## III

The Appellate Division's opinion focused upon Cicala's guilty plea testimony. The court found "[i]t is fairly apparent that the testimony of Cicala with respect to the guilty plea was used for the purpose of impressing the jurors of the existence of the conspiracy" and, upon the authority of *United States v. Toner*, 173 *F*. 2d 140 (3 Cir. 1949), it held that the plea of guilty by Cicala as an alleged co-conspirator should have been excluded and that its admission constituted reversible error. 153 *N. J. Super*. at 459.

The traditional view is that the guilty plea of a co-defendant is inadmissible in the separate trial of another defendant as substantive evidence of the latter's complicity. See, *e. g., United States v. Harrell*, 436 *F*. 2d 606, 614–616 (5 Cir. 1970); *United States v. Toner, supra* at 142; *State v. Felton*, 131 *N. J. Super*. 344 (App. Div. 1974) certif. den. 68 *N. J*. 140 (1975); Annot., "Admissibility of Statements of Coconspirators Made After Termination of Conspiracy and Outside Accused's Presence", 4 *A. L. R*. 3d 671, 709–710 (1965). The policy underlying this rule is that once a defendant is on trial, he "is entitled to have the question of his guilt determined upon the evidence against him, not on whether a Government witness or co-defendant has plead [sic] guilty to the same charge." *Babb v. United States*, 218 *F*. 2d. 538, 542 (5 Cir. 1955); also *United States v. Hall*, 178 *F*. 2d 853 (2 Cir. 1950); accord, *State v. Atkinson*, 25 *N. C. App*. 575, 214 *S. E*. 2d 270 (Ct. App. 1975). As stated in *United States v. Toner, supra* at 142:

From the common sense point of view a plea of guilty by an alleged fellow conspirator is highly relevant upon the question of the guilt of another alleged conspirator. If A's admission that he con-

spired with B is believed, it is pretty hard to avoid the conclusion that B must have conspired with A. This is one of the cases, therefore, where evidence logically probative is to be excluded because of some countervailing policy. There are many such instances in the law. See 4 Wigmore, Evidence § 1171 et seq (3d ed. 1940).

The foundation of the countervailing policy is the right of every defendant to stand or fall with the proof of the charge made against him, not against somebody else. Acquittal of an alleged fellow conspirator is not evidence for a man being tried for conspiracy. So, likewise, conviction of an alleged fellow conspirator after a trial is not admissible as against one now being charged. The defendant had a right to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else. * * *

[*Id.*] [Footnotes omitted]

The State attempts to minimize in this case the significance of the substantive use of a co-conspirator's guilty plea. It urges that an important reason for the general rule of exclusion is the right of a defendant under the Sixth Amendment to confront his accusers; consequently where, as here, the co-defendant is a witness at the trial and available for cross-examination, the reasons for exclusion of the guilty plea are undercut substantially.

It is true, of course, that the Sixth Amendment right of confrontation under the circumstances of a given case may constitute a compelling reason for excluding a co-defendant's guilty plea. See, *e. g., State v. Atkinson, supra,* 214 *S. E.* 2d at 272 (evidence that a co-defendant, who is not a witness, has pled guilty to the charge against defendant deprives defendant of his constitutional rights of confrontation and cross-examination). A similar argument for exclusion might also be predicated upon the hearsay rule. See *Dutton v. Evans,* 400 *U. S.* 74, 86–90, 91 *S. Ct.* 210, 218–220, 27 *L. Ed.* 2d 213, 225–227 (1970); *McKethan v. U. S.,* —— *U. S.* ——, 99 *S. Ct.* 333, 58 *L. Ed.* 2d 333 (1978) (denial of petitions for writs of certiorari, Stewart, J. dissenting). Thus some courts have excluded prior confessions of guilt as substantive evidence of the guilt of other defendants because such confessions constitute extra-judicial statements,

whether or not the declarant is testifying at trial, *e. g., United States v. Hicks,* 420 *F.* 2d 814 (5 Cir. 1970) ; *cf. Sothern v. Van Dyke,* 114 *N. J. L.* 1 (E. & A. 1934) ; *Gray v. State,* 221 *Md.* 286, 157 *A.* 2d 261, 263–264 (Ct. App. 1960) ; *State v. Cole,* 252 *Or.* 146, 448 *P.* 2d 523, 528 (Sup. Ct. 1958). But other courts have concluded that where a declarant is available as a witness at trial, a prior extra-judicial statement loses its character as hearsay, *Northwestern Mutual Life Insurance Co. v. Linard,* 498 *F.* 2d 556, 560 (2 Cir. 1974) ; *Vincent v. Thompson,* 50 *A. D.* 2d 211, 377 *N. Y. S.* 2d 118, 130–131 (App. Div. 1975) ; *cf. Cain v. George,* 411 *F.* 2d 572, 573 (5 Cir. 1969), especially so when the extra-judicial statement is offered through the testimony of the declarant as a witness. See *Ikerd v. Lapworth,* 435 *F.* 2d 197, 206 (7 Cir. 1970) ; Advisory Committee Note, *Fed. R. Evid.* 801(d) ; IIIA *Wigmore, Evidence* § 1018 (Chadbourn Rev. 1974) ; *McCormick, Evidence* § 251. Under this thesis, it might be reasoned, the admission of the prior confession through the live trial testimony of the declarant as a witness would not violate the hearsay rule.

These approaches are not controlling in resolving the problem raised in this appeal. The reasonableness of using a guilty plea against co-defendants as substantive evidence of their guilt cannot be made to turn upon whether such use would otherwise satisfy the Sixth Amendment or the hearsay rule. These safeguards secure certain imperatives vital to a criminal defendant on trial, particularly the need to be able to confront adverse witnesses and to assure that evidence bearing upon guilt is reliable and trustworthy. They do not address the cognate, elementary concern that all evidence directed to the issue of guilt be probative, material and relevant.

It is with reference to its probative quality that the guilty plea testimony of Cicala must be considered. It may be that as a matter of common experience one might believe that because one co-conspirator has pleaded guilty to a joint crime, others similarly charged are also guilty. *United States*

*v. Toner, supra; cf. State v. Felton, supra.* It is not enough, however, that a guilty plea simply as a matter of logic be relevant or probative of the guilt of others. *United States v. Toner, supra* at 142. There may be, and often are, many other undisclosed or collateral factors actuating a guilty plea in addition to guilt in fact. *Bordenkircher v. Hayes,* 434 *U. S.* 357, 98 *S. Ct.* 663, 54 *L. Ed.* 2d 604 (1978); *Blackledge v. Allison,* 431 *U. S.* 63, 72, 97 *S. Ct.* 1621, 1628, 52 *L. Ed.* 2d 136, 145 (1977); *Brady v. United States,* 397 *U. S.* 742, 756–757, 90 *S. Ct.* 1463, 1473, 25 *L. Ed.* 2d 747, 761 (1970). It is for that reason that a guilty plea of one person as such cannot be considered satisfactory or worthy evidence of the guilt of others even though similarly circumstanced and is properly excludable under the axiom that a defendant on trial is entitled "to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else." *United States v. Toner, supra* at 142; *Babb v. United States, supra* at 542. Hence we conclude, as did the court below, that Cicala's guilty plea was inadmissible as substantive evidence of the guilt of the defendants.

The State's strongest argument is that Cicala's plea was properly admissible for purposes of affecting credibility and that, under all of the circumstances, it did not have a sufficiently prejudicial effect as substantive evidence to require reversal of the convictions. The State relies upon both *N. J. S. A.* 2A:81–12 and *Evid. R.* 20 to justify the admissibility of Cicala's guilty plea. *N. J. S. A.* 2A:81–12 provides that: "[f]or the purpose of affecting the credibility of any witness, his interest in the result of the action, proceeding or matter or his conviction of any crime may be shown * * *." *Evid. R.* 20 permits introduction of "evidence relevant upon the issue of credibility."

Cicala's guilty plea was definitely admissible to affect his credibility as a witness. Defendants assert, however, that the State was limited to questioning Cicala with respect to whether "he ever pleaded guilty to a crime, what type of

crime it was, and what sentence he received"; beyond this, it is argued, any questioning as to the details of the crime was improper. Clearly this is not so. Cicala's guilty plea was presented to the jury as part of a plea bargain and the jury was advised that it involved a promise of consideration or a suggestion of leniency at the time of sentencing for his "cooperation" in the prosecution. Thus, the testimony of the guilty plea and the surrounding circumstances constituted evidence bearing directly upon Cicala's "interest in the result of the action", *N. J. S. A.* 2A:81–12, and was highly "relevant upon the issue of [his] credibility." *Evid. R.* 20. See *State v. Hodgson,* 44 *N. J.* 151, 163 (1965); *United States v. Bryza,* 522 *F.* 2d 414, 425 (7 Cir. 1975), *cert.* den. 426 *U. S.* 912, 96 *S. Ct.* 2237, 48 *L. Ed.* 2d 837 (1976); *United States v. King,* 505 *F.* 2d 602, 607 (5 Cir. 1974); *State v. Cole, supra,* 448 *P.* 2d at 528; *People v. Crawl,* 47 *Mich. App.* 749, 209 *N. W.* 2d 809 (Ct. App. 1973), rev'd on other grounds, 401 *Mich.* 1, 257 *N. W.* 2d 86 (Sup. Ct. 1977); *cf. State v. Sands,* 76 *N. J.* 127 (1978).

It must nevertheless be acknowledged that the admissibility of the guilty plea on the issue of credibility does not fully meet the defendants' contention that Cicala's plea was improperly admitted as substantive evidence and that its use as substantive evidence in the context of the entire trial was so prejudicial as to constitute reversible error.

The prosecutor, it is to be recalled, was cut off by the court and not given the opportunity to specify the purpose of the guilty plea testimony in the face of defense counsel's objections. Notwithstanding that defense objections to the guilty plea testimony were not clearly articulated, the court was mistaken in not clarifying the purpose of this line of testimony. But more important, the court itself was obligated independently under these circumstances to give the jury a proper cautionary instruction as to the limited use of this testimony for credibility purposes, even in the absence of a specification of reasons by the prosecutor or a request therefor by defendants. *Evid. R.* 6; *State v. Costa,* 11 *N. J.*

239, 249 (1953); *State v. Felton, supra,* 131 *N. J. Super.* at 349–350; also *United States v. Bryza, supra,* 522 *F.* 2d at 425; *Freije v. United States,* 386 *F.* 2d 408, 411 (1 Cir. 1967).

▮ Moreover, when a guilty plea of a co-defendant is brought to a jury's attention without any guiding instructions as to its use in their deliberations, the potential for misuse is manifest. *United States v. Harrell, supra,* 436 *F.* 2d at 614; *State v. Underwood,* 248 *Iowa* 443, 447–448, 80 *N. W.* 2d 730, 734 (Sup. Ct. 1957). This risk of misuse was aggravated here by the prosecutor's remarks during summation. The prosecutor, in effect, told the jury that it was an insult to their collective intelligence to believe that there would have been a guilty plea by Cicala if there had been no conspiracy. Furthermore, the trial court did not at that juncture or later in its general charge to the jury correct the prosecutor's misleading remark. The Appellate Division consequently determined, and we agree, that under all the circumstances no restriction was imposed upon the jury as to the limited admissibility of the evidence of Cicala's plea and that this constituted error. 153 *N. J. Super.* at 459.

The question becomes whether, in the context of the trial, the error was sufficiently harmful to justify a reversal of the convictions, that is, whether it was clearly capable of producing an unjust result. *R.* 2:10–2; *State v. DiPaglia,* 64 *N. J.* 288 (1974); see also *State v. Macon,* 57 *N. J.* 325 (1971).

▮ The absence of a limiting instruction to the jury restricting the use of a guilty plea to the issue of credibility is usually an important factor in determining whether the admission of the plea constitutes harmless error. *United States v. Toner, supra.* Compare *United States v. Harrell, supra,* 436 *F.* 2d at 614–616 (reversible error where jury was apprised of witness' guilty plea without proper limiting instructions) and *Freije v. United States, supra,* 386 *F.* 2d at 411 (admission of evidence of guilty plea of co-defendant presupposes that a cautionary charge will be given), with

*United States v. King, supra,* 505 *F.* 2d at 607–608 (failure to give a cautionary instruction is but one of many factors to be considered in assessing whether evidence of co-defendant's guilty plea prejudiced accused). *State v. Felton, supra,* found such error to be reversible, but in that case evidence of the guilty plea came before the jury with respect to a pleading co-defendant who did not in fact testify at the trial. To the same effect is *Trussell v. United States,* 278 *F.* 2d 478, 480 (6 Cir. 1960). In such a case it is not possible to develop through the testimony of the pleading defendant the facts which underlay the guilty plea, to expose the circumstances under which the guilty plea was given or to attack credibility through cross-examination.

Here, Cicala's complicity in the crime charged against defendants was established independently by his detailed testimony concerning his involvement in the crime; the jury was specifically made aware that the guilty plea was based only upon the facts to which he testified, namely, his criminal conversations with Festa and nothing more. Moreover, he was thoroughly cross-examined and his credibility severely tested. In this context, his guilty plea adds little, if any, extra evidential weight to the proofs establishing the existence of a conspiracy as between himself and Festa. See *Baker v. United States,* 393 *F.* 2d 604, 614 (9 Cir. 1968). *Cf. State v. Riddall,* 251 *Or.* 506, 446 *P.* 2d 517, 518 (Sup. Ct. 1968). It adds nothing of substantive consequence beyond the "evidential description" of the underlying crime furnished by the witness in his testimony to the jury. *State v. Hodgson, supra* 44 *N. J.* at 164. Against this factual testimony, the admission of the guilty plea without a limiting instruction was truly harmless. See *State v. Cole, supra,* 448 *P.* 2d at 528 (harmless error when co-conspirators' guilt established by their own testimony which also implicated defendant); also *United States v. Alfano,* 152 *F.* 2d 395, 398 (3 Cir. 1945) (concurring opinion); *United States v. Corso,* 100 *F.* 2d 604, 605–606 (7 Cir. 1938).

We are satisfied that the error did not have the clear capacity to produce an unjust result and that it had a minimal effect on the outcome of the trial. Accordingly, we reverse and reinstate the convictions.

SCHREIBER, J., concurring. I concur in the reversal of the judgment of the Appellate Division and the reinstatement of the convictions. However, I believe that the prosecutor's comments regarding Cicala's plea of guilty to the conspiracy charge when read in the context of his summation may well have been proper.

A criminal conviction generally may be introduced to affect the credibility of a witness. *State v. Sands,* 76 *N. J.* 127 (1978). Our cases also firmly establish that the State had a right on direct examination to disclose Cicala's guilty plea to the jury. In *State v. Holley,* 34 *N. J.* 9, *cert.* den. 368 *U. S.* 854, 82 *S. Ct.* 89, 7 *L. Ed.* 2d 51 (1961), Justice Francis wrote:

The law is settled in this jurisdiction that either party on producing a person as a witness may inquire on direct examination if he has been convicted of crime, and show the crime even if an affirmative answer is given. [34 *N. J.* at 13]

See also *State v. Costa,* 11 *N. J.* 239, 249 (1953); *State v. Fox,* 12 *N. J. Super.* 132 (App. Div. 1951). There are various reasons for the rule, but they are all grounded in considerations of credibility. In *Holley* and *Fox,* it was noted that since the State, like any other party, impliedly represents that a witness it presents is worthy of some credit, it is proper to aid the jury's evaluation of his testimony by bringing out the fact that he has been convicted of a crime. An additional rationale advanced in *Costa* is that such evidence protects the State from any inference that it was withholding information bearing upon the witness' credibility.

In the usual case, the conviction is unrelated to the facts at issue and is used only to impeach credibility. But a con-

viction relevant to a witness' credibility may also be introduced to support that credibility. This evidentiary principle is embodied in *Evid. R.* 20 which states that

for the purpose of * * * supporting the credibility of a witness, any party including the party calling him may examine him and introduce extrinsic evidence relevant upon the issue of credibility * * *. No evidence to support the credibility of a witness shall be admitted except to meet a charge of recent fabrication of testimony.

See *Fed. R. Evid.* 801(d)(1); *Uniform R. Evid.* 801(d)(1); 4 *Wigmore, Evidence* § 1129 (1972); *cf. State v. Neiman,* 123 *N. J. L.* 341 (Sup. Ct. 1939), aff'd o.b. 124 *N. J. L.* 562 (E. & A. 1940). Compare the "fresh complaint" rule. See *State v. Hintenberger,* 41 *N. J. Super.* 597 (App. Div. 1956). It is possible then for a guilty plea to have a dual impact, cutting in opposite directions, both related to credibility—in one respect supporting veracity and in the other, impeaching it.

Thus, Cicala's plea of guilty was admissible to corroborate and support his testimony. Since the theory of the defense outlined in the opening was that the victim Bruno staged the burglary to collect insurance and Cicala's credibility was sharply challenged by cross-examination,[1] it would seem that the charge of recent fabrication was satisfied. Accordingly, there was compliance with *Evid. R.* 20.

Arguably one could interpret the prosecutor's comments to the jury to suggest that the guilty plea be considered as substantive evidence. However, after reading the entire summation I am satisfied that the prosecutor was really attempting to stress, and the jury was only led to believe, that the guilty plea corroborated and supported Cicala's testimonial recital of the facts. Even if this were not so, I agree with the majority that any such error was harmless.

---

[1]Though the guilty plea was offered before cross-examination, its admissibility on one basis would not have precluded its use on another at the time of summation when its permissible scope had been broadened by the defendant's attack on the witnesss' credibility.

Furthermore, I do not agree with the majority that a guilty plea of a witness who is on the stand and subject to cross-examination cannot be admitted into evidence despite its materiality and relevance. The majority appears to believe that the plea's probative value, and therefore its admissibility, depends upon the witness' motivation in entering that plea. However, irrespective of the factors which actuated the plea, our courts do not accept a guilty plea unless there is a factual basis for it. *R.* 3:9–2. Under our practice the trial court must be satisfied from the lips of the defendant that he committed the acts which constituted the crime. Compare *State v. Reali,* 26 *N. J.* 222 (1958), with *North Carolina v. Alford,* 400 *U. S.* 25, 91 *S. Ct.* 160, 27 *L. Ed.* 2d 162 (1970). See also "Administrative Memo Re: Criminal Pleas," 94 *N. J. L. J.* 1 (1971). Accordingly, I cannot agree with the majority's conclusion that because a guilty plea may have been motivated by factors other than guilt, it cannot "for that reason" be considered satisfactory or worthy evidence of guilt of others. 78 *N. J.* at 433.

Other than as stated herein, I concur in the opinion of the majority and join in the judgment of reversal and reinstatement of the convictions.

PASHMAN, J., dissenting. I disagree with the manner in which the majority has disposed of this case. Although I am in accord that the trial court erred in allowing Cicala to testify as to his plea of guilty, I cannot accept the majority's conclusion that this error was harmless beyond a reasonable doubt. I also cannot subscribe to the majority's assertion that evidence of a co-conspirator's guilty plea is always admissible insofar as it bears upon the co-conspirator's credibility as a witness.

I

The overwhelming majority of the courts which have addressed the issue have held that a co-conspirator's guilty

plea is inadmissible as substantive evidence of the existence of a conspiracy in which a defendant has participated. *See, e. g., United States v. Harrell,* 436 *F.* 2d 606 (5th Cir. 1970); *United States v. Toner,* 173 *F.* 2d 140 (3rd Cir. 1949); *State v. Felton,* 131 *N. J. Super.* 344 (App. Div. 1974), certif. den. 68 *N. J.* 140 (1975). The reasons underlying this exclusionary rule have been ably summed up by the United States Court of Appeals for the Third Circuit:

> From the common sense point of view a plea of guilty by an alleged fellow conspirator is highly relevant upon the question of the guilt of another alleged conspirator. If A's admission that he conspired with B is believed, it is pretty hard to avoid the conclusion that B must have conspired with A. This is one of the cases, therefore, where evidence logically probative is to be excluded because of some countervailing policy. There are many such instances in the law.
>
> \*　　\*　　\*　　\*　　\*　　\*　　\*　　\*
>
> Acquittal of an alleged fellow conspirator is not evidence for a man being tried for conspiracy. So, likewise, conviction of an alleged fellow conspirator after a trial is not admissible as against one now being charged. *The defendant ha[s] a right to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else.*
>
> > [*U. S. v. Toner, supra,* 173 *F.* 2d at 142 (citations omitted, footnotes omitted) (emphasis supplied)]

*See Babb v. United States,* 218 *F.* 2d 538, 542 (5th Cir. 1955); *United States v. Hall,* 178 *F.* 2d 853 (2d Cir. 1950). These same considerations support the conclusion that such guilty plea evidence is inadmissible whether or not the co-conspirator is present in court and subject to cross-examination. In either situation, the defendant being tried is entitled to a verdict based solely upon proofs relating to whether he himself committed an offense, and not upon evidence bearing on the manner in which an alleged co-conspirator's case has been settled.

As the above cited passage from *Toner* emphasizes, evidence of a co-conspirator's guilty plea is not excluded because it

lacks relevance to the issues being adjudicated in the defendant's trial. Reasonable minds could logically infer from such a plea that a conspiracy did indeed exist. Rather, such evidence is inadmissible on grounds of fundamental fairness. It is patently unfair to subject a defendant to criminal sanctions merely because his alleged co-conspirator has not elected to stand trial. In effect, the guilty plea evidence cannot be introduced because its relevance is far outweighed by its potential prejudicial impact upon the jurors' deliberations.

Although acknowledging as much, see *ante* at 430–433, the majority nevertheless concludes that guilty plea evidence can be introduced by the prosecutor over the defendant's objections if utilized solely "to affect [the co-conspirator's] credibility as a witness." See *ante* at 433. This conclusion negates the policies underlying the general exclusion of guilty plea evidence. Moreover, it is premised upon a wholly unrealistic conception of the impact which this evidence will have upon jurors' deliberations.

*N. J. S. A.* 2A:81–12 does, at first glance, seem to authorize the prosecutor's introduction of guilty plea evidence for purposes of credibility. That statute provides:

For the purpose of affecting the credibility of any witness, his interest in the result of the action * * * or his conviction of any crime may be shown by examination or otherwise * * *.

The precise parameters of this statute cannot be appreciated, however, without a consideration of *Evid. R.* 4, which states in part that

The judge may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will . . . (b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury.

In *State v. Sands,* 76 *N. J.* 127 (1978), decided less than six months ago, Justice Schreiber speaking for this Court

squarely held that *N. J. S. A.* 2A:81-12 "do[es] not support the conclusion that *every* criminal conviction is automatically admissible . . . to affect the credibility of a criminal defendant." *Id.* at 138 (emphasis supplied). Although all prior convictions of a witness may in some way reflect upon his credibility, we acknowledge that with respect to certain convictions "admission will create undue prejudice." *Id.* at 147. Hence, we ruled that a trial judge must consider all the circumstances of a case prior to allowing any such conviction to be introduced into evidence.

The considerations which led to our holding in *Sands* apply with equal force to the situation here under review. The admission of a co-conspirator's guilty plea may indeed bear somewhat upon his credibility as a witness. However, its probative value is far outweighed by its prejudicial impact upon a defendant's case. Regardless of the presence of limiting instructions, it cannot reasonably be expected that jurors will appreciate the legal niceties outlined by the judge and utilize such evidence only for credibility purposes. Rather, they are likely to consider this plea as substantive evidence of the existence of a conspiracy in which the defendant participated.

Were "relevance" the only concern in this situation, guilty plea evidence would have to be deemed admissible as substantive evidence that a defendant committed an offense. As noted earlier, reasonable minds could logically infer from such a plea that a conspiracy did indeed exist. It is absurd to take account of the prejudicial impact inherent in such evidence when the guilty plea is relevant to the existence of a conspiracy but not when such a plea bears upon a witness' credibility.

I would therefore hold that unless the defendant otherwise agrees, a trial court may never allow the introduction of evidence dealing with a co-conspirator's guilty plea to crimes for which a defendant is presently being tried. The probative value of such evidence is outweighed by its prej-

udicial impact. Hence, it should be excluded pursuant to *Evid. R.* 4.

A *defendant* may, however, wish to introduce such evidence in order to call into question the veracity of a prosecution witness. In such a case, it would be unfair to prohibit the prosecutor on direct examination from first eliciting such evidence in order to negate its potential adverse impact upon the State's case. Prior to the calling of a convicted co-conspirator to the stand, a trial judge should therefore ask defense counsel whether he intends to question the witness as to his plea of guilty. If he answers in the affirmative, then the prosecutor can introduce the plea into evidence on direct examination. Otherwise, he cannot.

## II

In the present case, Cicala's guilty plea was clearly introduced in order to demonstrate that a conspiracy actually existed. In summing up his case before the jury, the prosecutor remarked:

\* \* \* [A] young man named Joseph Cicala pleaded guilty to conspiracies to break, enter and commit larceny inside the Bruno home. [Defendants] said it never happened, you see. Mr. Cicala pleaded guilty to something that didn't happen. Ladies and gentlemen, isn't your intelligence being insulted by an argument like that? I mean, aren't these defendants talking down to you as if you were a bunch of five year old children?

Thus, even accepting the majority's formulation of the exclusionary rule, the introduction of such evidence constituted error. The majority, however, labels this error "harmless". A review of the record below demonstrates the unsoundness of such a conclusion.

At no point did the trial judge instruct the jury that Cicala's guilty plea could be considered solely for the purpose of credibility. Several courts have held that such a limiting instruction is a prerequisite to a finding of harmless error when a co-conspirator's guilty plea is introduced into evidence. *See, e. g., United States v. Harrell,* 436 *F.* 2d 606,

614–16 (5th Cir. 1970); *Freije v. United States,* 386 *F.* 2d 408, 411 (1st Cir. 1967). Indeed, the courts of this State have emphasized the need for a jury instruction in this context. *See, e. g., State v. Costa,* 11 *N. J.* 239, 249 (1953); *State v. Felton,* 131 *N. J. Super.* 344, 348–350 (App. Div. 1974), certif. den. 68 *N. J.* 140 (1975).

Moreover, the evidence of guilt adduced below was not so overwhelming as to compel a finding that the trial court's error was harmless beyond a reasonable doubt. The State's case was primarily circumstantial in nature. Aside from Cicala's testimony, the only direct evidence implicating defendants in the conspiracy was the testimony of co-conspirator Gerald Festa. Given Festa's extensive criminal record and his interest in the outcome of the case, the jurors might very well have doubted his veracity. Thus, there clearly exists a reasonable possibility that testimony regarding Cicala's guilty plea "led the jury to a result it otherwise might not have reached." *State v. Macon,* 57 *N. J.* 325, 336 (1971).

The majority asserts that due to Cicala's testimony concerning his dealings with Festa, "his guilty plea add[ed] little, if any, extra evidential weight to the proofs establishing the existence of a conspiracy as between himself and Festa." See *ante* at 436. The soundness of this conclusion is belied by the prosecutor's decision to stress that very guilty plea during his summation. It seems to me, as it must have to the prosecutor, that a jury is likely to be influenced to a much greater extent by the presence of a conviction than by the mere narration of events culminating in a conviction.

Accordingly, I would affirm the judgment of the Appellate Division and remand this case for a new trial.

SCHREIBER, J., concurring in the result.

*For reversal and reinstatement*—Chief Justice HUGHES, Justices SULLIVAN, CLIFFORD, SCHREIBER and HANDLER and Judge CONFORD—6.

*For affirmance*—Justice PASHMAN—1.