131 N.J. Super. 344 (1974)
330 A.2d 23
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LEE ARTHUR FELTON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 4, 1974.
Decided December 9, 1974.
*345 Before Judges MICHELS, MORGAN and KENTZ.
Mr. William F. Hyland, Attorney General of New Jersey, attorney for respondent (Mr. Julian Wilsey, Deputy Attorney General, of counsel and on the brief).
Mr. Stanley C. Van Ness, Public Defender, attorney for appellant (Mr. Michael Suffness, Assistant Deputy Public Defender, of counsel and on the brief).
The opinion of the court was delivered by MORGAN, J.A.D.
Defendant appeals from his conviction upon a two-count indictment charging him with robbery, N.J.S.A. 2A:141-1, while being armed, N.J.S.A. 2A: 151-5, contending that reversible error was committed when the prosecutor, in the presence of the jury, made repeated references to the fact that defendant's confederate, one Thomas Williams, had been indicted and convicted for the same crime. Williams did not testify at defendant's trial.
James Melvin, the alleged victim of the robbery, testified that as he left a local poolroom and proceeded to his car in the late afternoon of December 28, 1972, he was accosted by two men with knives, later identified as Felton and codefendant Williams, who forced him into the front seat of *346 his car where he then sat between the two of them. Once in the car, Williams took $65 from him. Melvin maintained that he had seen defendant earlier in the day.
Thereafter, the three of them drove around for a short period of time during which time Williams allegedly suggested killing Melvin, a suggestion rejected by Felton who expressed the thought that since he had worked with Melvin, Melvin would not tell anyone about the incident. Accordingly, Melvin was released. Once home, Melvin called the police and an unsuccessful search for the assailants ensued. Back at the police station Melvin was told to come back later because he had had a few drinks. Subsequently, Melvin selected defendant's picture from a book of photographs.
Two officers from the Paterson Police Department confirmed Melvin's testimony concerning the search for the assailants and the circumstances in which the photographic identification of defendant was made. The only other evidence introduced on the State's case consisted of testimony confirming that defendant had previously worked with Melvin at Barney's Furniture Store. The State then rested its case.
Felton testified that he and Melvin had known each other previously and had in fact gone drinking together on several occasions. On a prior occasion Felton had loaned Melvin $10 and Felton's requests for repayment of the loan had gone unheeded for three weeks. On the day in question Felton had entered Melvin's car at Melvin's request and the two of them began drinking a pint of liquor which had been left under the seat of Melvin's car. They then had dinner and after returning to the poolroom Felton continued to dun Melvin for repayment of the $10 loan. Melvin finally gave Felton $2, promising to repay the balance at a later time. This part-payment did not apparently satisfy Felton since an argument concerning the unpaid balance ensued during which Williams joined them and asked for a ride home. Melvin did the driving and all three of them were intoxicated. Melvin and Felton continued to argue about the money and this argument soon *347 led to a fistfight which Williams aided in terminating. Melvin received a bloody nose in the affray and gave Felton $10. After threatening Felton, Melvin departed.
It was on cross-examination of Felton that the prosecutor made the references to the fact that Williams had been indicted for the Melvin robbery and that he had in fact been brought to justice. After examining Felton concerning Felton's knowledge that Williams had been indicted for this robbery, the following transpired:
Q. A man who according to what you told the ladies and gentlemen of this jury several minutes ago is completely innocent of the armed robbery he had been indicted for, just as you are, isn't tha correct?
A. That's right.
Q. Are you aware that he was brought to trial and brought to justice earlier this year in August?

At this point the trial judge intervened, and defendant's counsel registered an objection. The judge sustained the objection although no curative instruction was given to the jury. The prosecutor, nonetheless, continued to inquire of Felton as to his knowledge concerning the fact that Williams had been indicted for this very robbery.
Q. Are you aware, Mr. Felton, that your friend went along for the ride, his case has been disposed of prior to yours; are you aware of that?
A. No.
Q. You're not aware of that?
A. No.
Q. Your attorney hasn't told you that?
MR. MILLER: Objection your Honor, to communication between attorney and client.
THE COURT: Yes. The objection is sustained.
Q. I will withdraw the question. In any event you are aware that your friend Williams was charged with an armed robbery.
A. Yes.
Q. The same armed robbery you were charged with?
A. Yes.
Q. Isn't that correct?
A. Yes.

*348 Q. Have you attempted to subpoena that innocent man who is charged on the basis of Melvin's testimony to bring him into court to corroborate your story?
A. I don't know where he is.
Q. Have you asked your lawyer where he is?
A. No.
MR. MILLER: Objection, your Honor; same basis; attorney client.
THE COURT: He said no he didn't ask.
Q. Have you attempted to find out where he is, Mr. Felton?
A. No.
Q. You haven't?
A. No.
In summation, too, the State laid heavy emphasis upon the fact that Williams had been indicted for this same robbery, clearly intending to imply that he had been adjudicated guilty.
Who would call James Melvin a liar. Could you imagine that? And who would be the first man through that door. Who would be leading the parade? Who would be the number one man to come in here and sit on that witness stand and call James Melvin a liar? Why the man who was indicted for armed robbery as a result of James Melvin's story.
Defendant's objection was sustained by the judge on the ground that "the defendant said that he did not know the whereabouts of Williams." The prosecutor continued:
All right. Here is a man, Thomas Williams, who is, according to the defendant, in the defendant's own words, a friend; my friend Williams. The defendant's own testimony. A man  let's talk about facts; who was indicted on the same charge that the defendant in this case was indicted. Williams and Felton. The State of New Jersey vs. Thomas Williams and Lee Arthur Felton.
Another objection made by defense counsel was sustained again on the basis that since defendant did not know where Williams was, he could not produce him. Accordingly, the judge instructed the jury to draw no inference adverse to defendant from his failure to produce Williams.
In his charge the judge informed the jury that the indictment charged both Felton and Williams with commission of *349 the armed robbery in question, advising them that although two persons were charged, only the guilt of defendant Felton was at issue.
The charges against the other defendant have been disposed of. The matter of such disposition should not be of any concern to you since you are only to be concerned with the charges as they relate to this defendant.
The judge then informed the jury of the nature of an indictment, that it is merely a vehicle by which a charge "against this defendant" comes before the court for trial. The jury was advised that the mere fact that an indictment has been returned provides no evidence of guilt because an indictment is just a formal charge.
The jury convicted defendant of both counts and this appeal ensued.
Defendant contends that the repeated references to the fact that the codefendant had been indicted for the robbery and that, inferentially, he had been adjudicated guilty of this charge constituted reversible error in the absence of any fully sufficient curative charge clearly directed to correcting this error. We agree.
In the context of the present case the intent of the prosecutor in bringing to the jury's attention that Williams had been indicted for the robbery of Melvin and that Williams had been "brought to justice" on this charge is quite clear. Felton's testimony connected his own innocence of the charge to that of Williams, and the prosecution was trying to suggest to the jury that Williams was guilty as a basis for the inference that Felton was equally so. The prosecutor implemented this strategy by laying stress on the fact that Williams had been indicted, thus inviting the jury to infer Felton's guilt from the fact that he had been indicted. Clearly, the invited inference was not a permissible one. An indictment is no evidence of guilt of the charges contained therein, as the court's own instruction noted with respect to Felton's indictment. Trap Rock Industries, Inc. v. Kohl, 115 N.J. Super. 278 *350 (App. Div. 1971), rev'd 59 N.J. 471 (1971); State v. Orecchio, 16 N.J. 125 (1954).
Although this error might not have been considered prejudicial if coupled with a sufficiently explicit instruction to the jury to ignore it, reference to the disposition of the charges against Williams without any curative instruction constitutes error of such magnitude as to require reversal.
Although the prosecutor was precluded from informing the jury in explicit terms of Williams' conviction of the Melvin robbery, there is no question but that the repeated references to Williams having been indicted, together with the suggestion that he had been brought to justice earlier in the year, sufficed to convey the fact of Williams' conviction to the Felton jury. Evidence concerning conviction of a codefendant is improper. In State v. Costa, 11 N.J. 239 (1953), a case involving the charge of keeping a gambling place, the State produced five codefendants, each of whom had been indicted with defendant for the same offense. Each of those codefendants had been asked by the State whether they had been indicted for the same offense as defendant and whether they had pleaded non vult to that charge. Each had answered both questions in the affirmative. Subsequently, the indictments themselves, which contained notations of the non vult pleas and the sentences imposed, had been received into evidence. With respect to the oral testimony given, the court noted that it was "wholly without probative value against Costa." The State's contention that the admission of all five codefendants of their guilt of the same offense of defendant made the latter's guilt more likely was dismissed by the court as being "utterly devoid of merit." Id. at 248.
* * * If his plea of non vult be considered as an admission by each of the five of the facts stated in the indictment against him, such admissions, singly or collectively, are not admissions by Costa and therefore are not evidential against Costa unless falling within some recognized exception to the general rule * * *
This view is consistent with Evid. R. 63(10) which precludes admission of a statement against a declarant's penal interest *351 when offered against a defendant in a criminal prosecution. In the present case, however, Williams did not plead guilty or non vult, and nothing he did can be regarded as an admission concerning his own guilt. A verdict of a jury adjudicating Williams' guilt can be accorded no greater effect than a plea of non vult or guilty. Moreover, in this case, Williams was not even called to testify, and there was therefore no occasion to inform the jury of his conviction as a permissible means of impeaching his credibility. State v. Costa, supra; State v. Fox, 12 N.J. Super. 132 (App. Div. 1951).
Where two or more persons are jointly indicted for the same criminal offense which is in its nature several, or are separately indicted for such offense or for separate offenses growing out of the same circumstances, and are tried separately, evidence that one defendant has pleaded guilty or has been convicted is, as a general rule, inadmissible as against the other. United States v. Harrell, 436 F.2d 606 (5 Cir.1970); LeRoy v. Government of Canal Zone, 81 F.2d 914 (5 Cir.1936); People v. Kief, 126 N.Y. 661, 27 N.E. 556 (Ct. App. 1891). In United States v. Toner, 173 F.2d 140 (3 Cir.1949), a case charging defendant with several counts of conspiracy, the judge instructed the jury that they could consider the guilty plea of defendant's coconspirator in any way they pleased. Although it is not clear as to how the jury learned of the plea, the court held this instruction to be error, stating:
From the common sense point of view a plea of guilty by an alleged fellow conspirator is highly relevant upon the question of the guilt of another alleged conspirator. If A's admission that he conspired with B is believed, it is pretty hard to avoid the conclusion that B must have conspired with A. This is one of the cases, therefore, where evidence logically probative is to be excluded because of some countervailing policy. There are many such instances in the law * * *
The foundation of the countervailing policy is the right of every defendant to stand or fall with the proof of the charge made against him, not against somebody else. Acquittal of an alleged fellow conspirator is not evidence for a man being tried for conspiracy. So, likewise, conviction of an alleged fellow conspirator after a trial *352 is not admissible as against one now being charged. The defendant had a right to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else * * * [at 142]
Accordingly, and with few exceptions, the universally accepted rule has been that statements of coconspirators made outside the presence of defendant are not admissible against him, unless made during the progress of the conspiracy and in furtherance of its objects. Scarborough v. United States, 232 F.2d 412, 415 (5 Cir.1956). It is perhaps even clearer that unless the charge is conspiracy, the statements of a codefendant made outside the presence of the defendant on trial are never admissible as being against penal interest. United States v. Harrell, supra 436 F.2d at 616. As to defendant on trial, such statements are hearsay. See also, State v. Pikul, 150 Conn. 195, 187 A.2d 442 (Conn. Sup. Ct. Err. 1962) (admission of codefendants' testimony that they had pleaded guilty, held improper and highly prejudicial); Gray v. State, 221 Md. 286, 157 A.2d 261 (Ct. App. 1960) (evidence of codefendant's conviction and sentence, held reversible error); Commonwealth v. Thomas, 443 Pa. 234, 279 A.2d 20 (Sup. Ct. 1971) (evidence of codefendant's conviction, held error but not prejudicial in light of overwhelming evidence of guilt). 2 Wharton, Criminal Evidence (12 ed. 1955), § 439; Annotation, 48 A.L.R.2d 1016.
In United States v. Baete, 414 F.2d 782 (5 Cir.1969), Lindsey, Baete's codefendant in the Dyer Act prosecution, testified without objection and without request for a limiting instruction that he (Lindsey) had earlier pled guilty to the charges. The judge, sua sponte and without request, charged the jury not to consider Lindsey's guilty plea in determining the innocence or guilt of Baete. The Circuit Court affirmed because of the sufficient instruction given, noting:
In cases where the jury has become aware of a codefendant's guilty plea, we think the appellate court should carefully focus its attention on the sufficiency of the corrective instruction. * * *

* * * * * * * *
*353 We recognize the fact that there may be aggravated circumstances in which the strongest corrective instruction would be insufficient, as, for example, where the guilty plea of one codefendant necessarily implicates another or others. However, in the absence of such circumstances, we think that a clear and strong cautionary instruction should be deemed sufficiently curative. * * *
The court in Harrell concluded with the following observation:
Again, we decide only the case before us. But we think that the evidentiary purpose ordinarily to be served by proof of a codefendant's plea of guilty is so shadowy, so insubstantial that it would be the better practice in run-of-the-mill cases to exclude such proof altogether.
Nowhere in his charge did the trial judge clearly instruct the jury to disregard the fact that Williams had been indicted and convicted of the same robbery. In all fairness to the judge, it should be noted that his failure to so charge probably stemmed from the circumstance that this information was conveyed to the jury by way of innuendo (that Williams had been brought to justice), and he did not wish to compound the error. Nonetheless, the net result is that the jury went uninstructed in this regard. The instruction that the jury should not be concerned with the disposition of the charge against Williams is patently insufficient to correct the prejudicial effect of this information.
The case submitted to the jury concerned primarily an issue of credibility  whom the jury was to believe, the victim Melvin or defendant Felton. Felton did not deny being with Melvin on the night of the robbery. The case did not therefore involve an identification issue. Felton admitted there had been a fight. The only issue for the jury to decide was whether they would believe the alleged victim's version of what had transpired or Felton's. The State suggests that Felton's own version of the incident establishes that he robbed Melvin. Thus, it is noted that Felton testified that he and Melvin had a fight and thereafter Melvin repaid him $10 on the debt owed. The jury could have concluded, but did not *354 have to, that such conduct constituted a robbery. At any rate, such testimony, if believed, would not have constituted armed robbery for which Felton was convicted. This is not a case, therefore, where the proof of defendant's guilt can be regarded overwhelming. In this context the evidence of Williams' conviction for the same offense, particularly in light of defendant's testimony tying Williams' innocence to his own, was prejudicial and clearly capable of producing an unjust result. R. 2:10-2; State v. Tirone, 64 N.J. 222, 227 (1974).
We, therefore, reverse the conviction and remand the case for a new trial. Because of this decision, we need not pass on the other claims of error raised in this appeal.