842 A.2d 290 (2004)
367 N.J. Super. 200
STATE of New Jersey, Plaintiff-Respondent,
v.
Justin RUCKI, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 8, 2003.
Decided March 1, 2004.
*291 Yvonne Smith Segars, Public Defender, attorney for appellant (Laura Lorenzo Milcsik, Designated Counsel, on the brief).
Peter C. Harvey, Attorney General, attorney for respondent (Jeanne Screen, Deputy Attorney General, of counsel and on the brief).
Before Judges SKILLMAN, COBURN and FISHER.
The opinion of the court was delivered by SKILLMAN, P.J.A.D.
*292 At defendant's robbery trial, the trial court ruled that defendant "opened the door" to admission of evidence of his alleged accomplice's guilty plea by testifying that neither he nor the accomplice robbed the alleged victims. We conclude that the guilty plea of the alleged accomplice, who did not testify at defendant's trial, was inadmissible hearsay, and that defendant did not open the door to admission of this evidence by testifying that neither he nor the alleged accomplice committed a robbery. Consequently, we reverse defendant's conviction.
A jury found defendant guilty of two counts of second-degree robbery, in violation of N.J.S.A. 2C:15-1. The trial court sentenced defendant to concurrent indeterminate terms at the Youth Correctional Facility.
Defendant's convictions were based on an incident in which, if the alleged victims' version is credited, defendant and his confederate James Kosch committed a robbery upon Efrain Garcia and Uriel Vasquez, or if defendant's version is credited, Garcia and Vasquez assaulted and attempted to rob defendant and Kosch. Garcia, Vasquez and defendant testified at defendant's trial. Kosch did not testify.
According to Garcia and Vasquez, they first encountered defendant and Kosch around midnight on September 11, 2000, in a Dunkin' Donuts in Point Pleasant. Defendant and Kosch asked them the time, and Vasquez responded that they did not have a watch. After buying drinks, Garcia and Vasquez left the Dunkin' Donuts and began riding home on their bicycles. Defendant and Kosch followed, also riding bicycles. When they arrived at the Point Pleasant Bridge, defendant and Kosch cut-off Vasquez and defendant began hitting him on the head. They asked Vasquez whether he had money, and he said no. At this point, Garcia, who had been riding ahead of Vasquez, turned around and went back to help him. As he approached, one of the assailants said: "We want money. That's what we want." Defendant then punched Garcia in the face. Garcia began to run away, but defendant and Kosch caught him, threw him to the ground, started kicking him in the head and back, and grabbed his knapsack. Vasquez removed his bicycle chain from his bicycle, ran to where defendant and Kosch were assaulting Garcia and began swinging the chain. Defendant and Kosch got back on their bicycles and rode away, taking Garcia's knapsack with them.
Testifying in his own defense, defendant presented a starkly different version of the incident. According to defendant, as he and Kosch were approaching the Point Pleasant Bridge on their bicycles, Garcia and Vasquez drove up next to him on their bicycles, and asked whether he had the time. Defendant responded that he did not have a watch. Garcia and Vasquez then knocked him off his bicycle, jumped on his back, got him down onto the ground, and tried to pull his wallet out of his back pocket. Kosch ran over to assist him and punched one of his assailants in the face. Defendant punched the other one and managed to get both of them off of him. Defendant heard Kosch say, "One of them has a chain," and then observed Vasquez swinging a chain. At this point, defendant and Kosch were able to get back on their bicycles and escape.
The issue of admissibility of evidence of Kosch's guilty plea arose during defendant's cross-examination, when the prosecutor asked whether he was aware of the disposition of the charges against Kosch. Defense counsel objected to this question, but the trial court overruled the objection on the ground that defense counsel had opened the door to evidence of Kosch's *293 guilty plea by asking defendant on direct whether Kosch had robbed the alleged victims.
The prosecutor then elicited the following testimony from defendant:
Q. Are you aware of the outcome of [Kosch's] case?
A. Yeah. His case got dropped down to an assault. And he pled guilty to it `cause he did assault them. He did hit them.
Q. Which is exactly what you did, isn't it?
A. No, I did not assault them. I was protecting myself. I mean, they jumped on my back.
Q. Wasn't it your testimony that all he did was defend you?
A. Yeah. In my eyes, he defended me. I don't know what hewhat exactly happened with him.
Q. Well, you were there at the scene with him, weren't you?
A. Yeah, yeah. I seen him hit them.
Q. So you saw him assault those two boys?
A. Did I see him assault these two boys? No. All's I seen was, when I got up, that I hit the one guy and he was still trying to grab me, so I kneed him in the face to get him off me, and I just left. He told me later on that he hit them.
Q. And your conduct was the same conduct that James Kosch pled guilty to; wasn't it?
[Defense counsel]: Objection.
A. No, sir. No, sir.
THE COURT: Sustained. Wait, wait. There's no question pending.
[Prosecutor]: Judge, thank you. I have no further questions.
Defendant subsequently moved for a mistrial on the ground that the trial court had erred in allowing the State to present evidence of Kosch's guilty plea. The trial court denied the motion, reiterating its view that defendant had "opened the door" to admission of this evidence by testifying that neither he nor Kosch had attempted to rob the victims.
We have previously recognized that it is improper for a prosecutor to present evidence that a non-testifying co-defendant has pled guilty or been convicted of the same or related charges. In State v. Felton, 131 N.J.Super. 344, 330 A.2d 23 (App. Div.1974), certif. denied, 68 N.J. 140, 343 A.2d 428 (1975), the defendant was charged along with an alleged accomplice named Williams of committing a robbery upon a man named Melvin. As in this case, defendant took the stand and presented an exculpatory version of the incidentthat Melvin owed him $10, that he and Melvin, both of whom were drunk, got into a fistfight regarding the unpaid debt, which Williams broke up, following which Melvin repaid the $10. On cross-examination, the prosecutor asked the defendant: "Are you aware that [Williams] was brought to trial and brought to justice earlier this year in August?" Although the trial court sustained defendant's objection to this question, it did not give the jury a curative instruction, and the prosecutor proceeded throughout the remainder of the trial to make repeated references to the fact that Williams had been indicted for the robbery and, inferentially, that he had been found guilty. In concluding that the prosecutor's questions and comments deprived defendant of a fair trial, we stated:
In the context of the present case the intent of the prosecutor in bringing to the jury's attention that Williams had been indicted for the robbery of Melvin and that Williams had been "brought to justice" on this charge is quite clear.

*294 Felton's testimony connected his own innocence of the charge to that of Williams, and the prosecution was trying to suggest to the jury that Williams was guilty as a basis for the inference that Felton was equally so.
....
Although the prosecutor was precluded from informing the jury in explicit terms of Williams' conviction of the Melvin robbery, there is no question but that the repeated references to Williams having been indicted, together with the suggestion that he had been brought to justice earlier in the year, sufficed to convey the fact of Williams' conviction to the Felton jury.
....
Where two or more persons are jointly indicted for the same criminal offense which is in its nature several, or are separately indicted for such offense or for separate offenses growing out of the same circumstances, and are tried separately, evidence that one defendant has pleaded guilty or has been convicted is, as a general rule, inadmissible as against the other.
[Id. at 349-51, 330 A.2d 23.]
In State v. Stefanelli, 78 N.J. 418, 430-35, 396 A.2d 1105 (1979), the Court held that evidence of a co-defendant's guilty plea was properly admitted, but only because, unlike in Felton, the co-defendant testified at defendant's trial, thus putting the co-defendant's credibility in issue. The Court began its discussion of the issue by noting "[t]he traditional view ... that the guilty plea of a co-defendant is inadmissible in the separate trial of another defendant as substantive evidence of the latter's complicity." Id. at 430, 396 A.2d 1105. The Court stated that this rule is based on both the rule against hearsay and the Sixth Amendment right of confrontation. Id. at 431, 396 A.2d 1105. The Court observed that a co-defendant's guilty plea also may be misleading because "[t]here may be, and often are, many undisclosed or collateral factors actuating a guilty plea in addition to guilt in fact." Id. at 433, 396 A.2d 1105. Consequently, the Court concluded that even when a co-defendant testifies at trial, his guilty plea is inadmissible as substantive evidence of the defendant's guilt. Ibid. It is only "admissible to affect [the co-defendant's] credibility as a witness." Ibid. Therefore, the trial court is required "to give the jury a proper cautionary instruction as to the limited use of this testimony for credibility purposes." Id. at 434, 396 A.2d 1105.
In this case, Kosch did not testify. Consequently, there was no basis for introduction of evidence of his guilty plea for the purpose that was allowed in Stefanellito attack the credibility of a testifying co-defendant. Rather, as in Felton, evidence of Kosch's guilty plea was inadmissible because it was hearsay that does not fall within any exception to the hearsay rule and violated defendant's Sixth Amendment right of confrontation. See Stefanelli, supra, 78 N.J. at 431, 396 A.2d 1105; Felton, supra, 131 N.J.Super. at 352, 330 A.2d 23.[1] Furthermore, Kosch's plea was not admissible to impeach the *295 credibility of defendant's testimony, because extrinsic evidence offered for the purpose of impeachment is generally subject to the same rules of admissibility, including the rule against hearsay, as any other evidence.[2]
Although the trial court recognized that a guilty plea of a non-testifying alleged accomplice ordinarily would be inadmissible, the court ruled that defendant had "opened the door" to admission of this evidence by testifying on direct examination that Kosch did not "try to rob" Garcia or Vasquez. "The `opening the door' doctrine... authorizes admitting evidence which otherwise would have been ... inadmissible in order to respond to (1) admissible evidence that generates an issue, or (2) inadmissible evidence admitted by the court over objection." State v. James, 144 N.J. 538, 554, 677 A.2d 734 (1996). "The doctrine ... allows a party to elicit otherwise inadmissible evidence when the opposing party has made unfair prejudicial use of related evidence." Ibid. However, as our Supreme Court has recently cautioned, this doctrine "can be used only `to prevent prejudice' and may not `be subverted into a rule for [the] injection of prejudice.'" State v. Vandeweaghe, 177 N.J. 229, 238, 827 A.2d 1028 (2003) (quoting James, supra, 144 N.J. at 556, 677 A.2d 734).
The testimony which the trial court found "opened the door" to introduction of evidence of Kosch's guilty plea consisted solely of the following questions and answers at the end of defendant's direct examination:
Q. At any time this night, did you try to rob one of those Mexican guys?
A. No, sir, I did not.
Q. Did your friend try to rob one of those Mexican guys?
A. No, no, he did not. If anything, he was trying to help me.
In overruling defendant's objection to the prosecutor's questions that elicited evidence of Kosch's plea, the trial court stated that when defense counsel asked defendant "whether or not his co-defendant did anything wrong at all that night, and he responded `No,' [that] made [the prosecutor's inquiry about Kosch's guilty plea] an appropriate question."
This ruling reflects a serious misconception of the "opening the door" doctrine. Defendant's version of the incident on the Point Pleasant Bridge was that Garcia and Vasquez had attempted to rob Kosch and him, rather than the converse, as Garcia and Vasquez had testified. Thus, defendant's assertion that Kosch had not robbed or assaulted Garcia and Vasquez was inherent in his version of the incident. His claim that he was a victim rather than a perpetrator necessarily also applied to his companion, Kosch. Under these circumstances, there was no basis for the trial *296 court to conclude that defendant "made unfair prejudicial use" of his testimonial assertion that Kosch had not attempted to rob Garcia and Vasquez, James, supra, 144 N.J. at 554, 677 A.2d 734, which could be rectified only by allowing the State to introduce evidence of Kosch's guilty plea.[3]
We also conclude that admission of evidence of Kosch's guilty plea cannot be found to have been harmless error. Although the State presented some evidence corroborating Vasquez's and Garcia's version of the incident, in particular defendant's and Kosch's flight from the scene, this was essentially a credibility case, in which the jury was required to determine whether Garcia and Vasquez or defendant had told the truth about what occurred on the Point Pleasant Bridge. Moreover, the prejudicial effect of admission of the evidence of Kosch's guilty plea was magnified by the trial court's instruction that the jury could consider this evidence "with regard to your evaluation of [defendant's] credibility." Therefore, the admission of evidence of Kosch's guilty plea could very well have turned the tide against defendant and resulted in his conviction.
Finally, because this case must be retried, we note that defendant's argument that Garcia's and Vasquez's "show-up" identifications of defendant as one of the perpetrators was impermissibly suggestive is clearly without merit. R. 2:11-3(e)(2).
Accordingly, defendant's convictions are reversed and the case is remanded for a new trial.
NOTES
[1] Several federal circuit courts of appeals have concluded that a non-testifying co-defendant's guilty plea is admissible under the federal statement against interest exception to the hearsay rule contained in Federal Evidence Rule 804(b)(3). See, e.g., United States v. Aguilar, 295 F.3d 1018, 1020-23 (9th Cir.), cert. denied, 537 U.S. 966, 123 S.Ct. 404, 154 L.Ed.2d 325 (2002); United States v. Centracchio, 265 F.3d 518, 524-30 (7th Cir.2001); United States v. Moskowitz, 215 F.3d 265, 268-70 (2d Cir.), cert. denied, 531 U.S. 1014, 121 S.Ct. 571, 148 L.Ed.2d 489 (2000). These decisions have been severely criticized. See Mary Cecilia Sweeney-Kwok, Note, An Argument Against the Arbitrary Acceptance of Guilty Pleas as Statements Against Interest, 71 Fordham L.Rev. 215, 231-38 (2002). However, even if the interpretation of Federal Evidence Rule 804(b)(3) upon which these decisions are based is correct, and such interpretation does not result in a violation of the Confrontation Clause of the Sixth Amendment, these decisions have no applicability in New Jersey because the statement against interest exception to the hearsay rule in the New Jersey Rules of Evidence provides that "[s]uch a statement is admissible against an accused in a criminal action only if the accused was the declarant." N.J.R.E. 803(c)(25). Because the accused is not the declarant of a co-defendant's guilty plea, New Jersey Evidence Rule 803(c)(25) does not authorize admission of such evidence.
[2] Some forms of evidence are admissible solely for purposes of impeachment, such as the criminal record of a witness. See N.J.R.E. 609; State v. Sands, 76 N.J. 127, 133-45, 386 A.2d 378 (1978). Under Stefanelli, the guilty plea of a co-defendant is such evidence, but it is admissible solely for the purposes of impeaching the testimony of a co-defendant.
[3] We note that defendant did not introduce evidence of any out-of-court statement by Kosch. Therefore, this is not a case like State v. Sego, 266 N.J.Super. 406, 410-14, 629 A.2d 1362 (App.Div.), certif. denied, 134 N.J. 566, 636 A.2d 523 (1993), in which we held that the State could impeach an out-of-court statement by the co-defendant exculpating defendant by introducing evidence of another out-of-court statement by the co-defendant inculpating defendant.